IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

KEVIN SHAWN GOSHA,                    )    CASE NO. 1:12CV2307
                                      )
                 Petitioner,          )
                                      )    JUDGE LIOI
           v.                         )
                                      )    MAGISTRATE JUDGE VECCHIARELLI
WARDEN, Marion Correctional          )
Institution,                          )
                                      )    **REPORT AND RECOMMENDATION**
                 Respondent.          )

This matter is before the magistrate judge pursuant to Local Rule 72.2.

Petitioner, Kevin Shawn Gosha ("Gosha"), challenges the constitutionality of his

conviction in the case of *State v. Gosha*, Case No. CR-09-525493-A (Cuyahoga County

2009).  Gosha filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("§

2254") on September 13, 2012 in the United States District Court for the Northern

District of Ohio.  For the reasons given below, Gosha's petition should be denied and

dismissed with prejudice.

I.

The May 2009 term of the Cuyahoga County grand jury indicted Gosha and co-

defendant Arthur Smith ("Smith") in connection with the shooting death of Darnell

Mongo ("Mongo").  The indictment charged Gosha with (1) aggravated murder by prior

calculation with a felony murder specification, two firearm specifications, a repeat violent offender specification, and a notice of prior conviction; (2) aggravated murder in the course of an aggravated robbery with a felony murder specification, two firearm specifications, a repeat violent offender specification, and a notice of prior conviction; (3) aggravated robbery with two firearm specifications, a repeat violent offender specification, and a notice of prior conviction; (4) tampering with evidence with two firearm specifications; and (5) a count of having a weapon while under a disability. Gosha pleaded not guilty to all counts.  Smith, the co-defendant, pleaded guilty to voluntary manslaughter and having a weapon while under a disability and agreed to testify against Gosha.

The state withdrew the felony murder specifications prior to trial.  Gosha waived his right to a jury trial on the charges of tampering with evidence, having a weapon while under disability, the notice of prior conviction, and the repeat violent offender specifications.  A jury trial on the two counts of aggravated murder and the aggravated robbery began on May 6, 2010.  The state appellate court hearing Gosha's direct appeal found the following facts to be relevant to his trial:

{¶ 7} Robert Smith testified that he lives on Northfield Avenue near Chapman Avenue in East Cleveland.  During the early morning hours of May 21, 2009, he went to the area of Northfield and Potomac Avenues, a short distance from his home, in order to make a drug buy.  He then heard an argument taking place in the middle of the street on Northfield Avenue, at the adjacent corner.  After that, he heard a gunshot.  A couple of minutes later, he saw a van proceeding down Northfield Avenue and collide into a concrete overpass.  He then heard more gunshots, so he hid in nearby bushes.

{¶ 8} After a few moments he heard more people on the scene.  He approached the van and observed Terrell Bilal (Terrell) and Terrance Bilal (Terrance) attempting to help the driver.

2

{¶ 9} Terrell testified that he lives in an apartment near the intersection of Elderwood and Northfield Avenues in East Cleveland.  With regard to the instant matter, Terrell testified that he was in his apartment when he heard three or four gunshots.  Terrell looked out his window and saw a tall man walking. This man walked to a nearby "whitish/bluish" car.  Terrell went outside to check on his younger brother, Terrance, then walked over to Northfield Avenue, where he observed a van that had crashed into the side of an overpass, on the side of oncoming traffic.  Terrell instructed Terrance to call the police.

{¶ 10} Terrell looked inside the van and attempted to open the front passenger door.  The door would not open so he reached into the partially opened window and opened the door from the inside.  The driver's upper body was slumped in the front passenger seat, and the rest of his body was behind the wheel in the driver's seat. Terrance entered the side door of the van.  The men began to speak to the driver, later identified as Mongo, but he was unresponsive and shaking.  Blood was coming through the seat and running through to the back of the van, but the men could not determine the location of his injuries.

{¶ 11} Terrell took the driver's cell phone and called the last number that had been dialed.  A female answered, and Terrell told her that the man who was in the van was hurt.  Robert Smith and another unidentified man arrived, followed by the female Terrell had called on the cell phone.

{¶ 12} Terrance testified that he lives in the apartment next door to Terrell near the intersection of Elderwood and Northfield Avenues.  Terrance stated that he heard gunshots, the screech of tires, and the sound of a vehicle crashing.  After the crash, he heard three more gunshots.

{¶ 13} Terrance looked out his window and observed a tall, skinny guy walking away from a nearby van.  According to Terrance, the man stood in the middle of the intersection of Northfield and Elderwood Avenues.  Terrance called out to the man in the street to see if the man was okay, but the man did not respond.  A car pulled over toward the man and he entered the vehicle.  He and the driver of this vehicle stayed there for a short time.  They looked over at Terrance, and then turned around and proceeded on Elderwood Avenue.  They then dropped the tall, skinny man off at a parked vehicle.

{¶ 14} Terrell reached the van first and instructed Terrance to call the police. They then got into the van to check on the driver.  Another neighbor whose nickname is "Dirty" arrived to help.  The driver of the van was incoherent, and blood was pooling on the floor.

{¶ 15} On cross-examination, Terrance admitted that he has been convicted of felonious assault and abduction.

3

{¶ 16} Agent Winterich testified that he processed a green GMC van, the crime scene in this matter.  The driver's side door would not open because of the damage sustained in the crash, there were two bullet holes in the front windshield near the driver's side, and there was a rust hole in a portion of the floor board.  The interior of the van had extensive blood stains, and a large volume of blood was pooled toward the back of the van and also seeped outside. Lawn equipment and tools were in the back of the van.

{¶ 17} According to Agent Winterich, one bullet hole was found on the windshield just above the wiper, and the other bullet hole was in the area where the windshield meets the hood.  Agent Winterich determined that the shots were fired at 86 degrees and 88.3 degrees, or were, essentially, straight on shots at the driver.  One of the bullets fragmented after it struck the frame of the car, and the other became lodged in insulation behind the instrument panel.  Neither bullet, therefore, struck Mongo.

{¶ 18} Agent Winterich also observed a receipt for allergy medicine purchased at CVS on May 21, 2009, at 1:26 a.m.  He obtained latent fingerprints from inside the van but there was not enough ridge detail to conduct an analysis.

{¶ 19} On cross-examination, Agent Winterich stated that he could not determine whether the shooter was inside or outside the van, but he denied telling officers on the scene that the fatal shot was fired into the van from the front of the vehicle.

{¶ 20} Sergeant Bechtel testified that he responded to the call for police assistance.  Although the initial call to the police indicated that the driver had been involved in a motor vehicle accident, the officers at the scene determined that the driver had been shot.  Sergeant Bechtel helped remove the man from the van and place him on a gurney.  The man struggled to get off of the gurney but was uncommunicative.

{¶ 21} Sergeant Bechtel and other officers observed a bullet hole at the base of the windshield.  About 500 feet away from the scene of the crash, the officers observed a puddle of blood and a blood trail leading back toward the underpass where the van had crashed.  The officers photographed the blood stains, but they did not do blood typing.

{¶ 22} Codefendant Smith testified that he pled guilty to charges of involuntary manslaughter  and having a weapon while under disability in connection with this matter.  He was given a sentence of 15 years of imprisonment, and as part of his plea agreement, he was required to testify against defendant.

{¶ 23} Smith testified that he and defendant were friends and that they often used crack cocaine together.  On May 20, 2009, Smith got a room at McCall's Motor

Inn and he, defendant, Smith's girlfriend (Michelle), and another woman named Rochelle went there to drink and use drugs.  Defendant later left this party and, during the early morning hours of May 21, 2009, Smith asked defendant to pick him up and take him to purchase a wholesale quantity of drugs, which Smith intended to then resell.

{¶ 24} The men decided to contact defendant's friend, Mongo.  According to Smith, however, the defendant owed Mongo money, so Smith called to setup the sale approximately four blocks away from McCall's Motor Inn.

{¶ 25} The defendant drove Smith to this location, spotted Mongo's van, and parked behind the van.  Defendant then entered the van, while Smith waited in defendant's car with a handgun.  Smith heard defendant and Mongo arguing.  Defendant then put his right hand out of the passenger window and motioned for the gun.  Smith approached the men inside the van and asked them what was happening.  Mongo then gave Smith a package of drugs that Smith believed was less than the amount he had purchased.  Smith then handed the gun to defendant.  The defendant then grabbed additional drugs that Mongo had in his hand, and shot Mongo in his lower body.  Smith took the gun back and asked defendant what he had done, then fled back to McCall's Motor Inn.

{¶ 26} As Smith was running, he saw Mongo's van heading directly toward him.  Smith started shooting at the van.  The van subsequently crashed into the wall of an overpass.  Smith spotted the defendant driving near Euclid Avenue and got into defendant's car.  Smith asked the defendant to drive back to the inn, but the defendant was afraid to return there.  Defendant then drove Smith to "Smitty's," Michelle's father's house, on Rozelle Avenue.

{¶ 27} After they arrived at Smitty's, defendant and Smitty returned to the inn to pick up the women, while Smith disassembled the gun.  Smith explained that he was "getting rid of what needed to be get rid of."  Defendant and Smitty then returned to Rozelle Avenue with the women.  Later, Smith, Michelle, Rochelle, and defendant drove to St. Clair Avenue, to the home of one of defendant's friends and continued partying.  While en route, defendant drove and Smith threw the pieces of the disassembled gun out of the car window.

{¶ 28} Smith further testified that defendant drove the group to the El Dorado Hotel.  Defendant subsequently learned that Mongo had died. Smith learned that the police were looking for him, so he turned himself in at the East Cleveland police station.  He provided the police with a statement in which he indicated that they arranged to meet with Mongo in order to buy drugs, that defendant drove a Vibe sport utility vehicle, that defendant made the purchase inside Mongo's van, and that Smith then passed his weapon to defendant.  He stated that he dismantled the gun and, while the group traveled from Rozelle Avenue to St. Clair Avenue, he threw the pieces of the gun out of the car window.  Smith also

5

stated that as he fled, Mongo's van proceeded directly at him, and he fired at the van.

{¶ 29} On cross-examination, Smith admitted that he has prior convictions for robbery, carrying a concealed weapon, drug possession, and having a weapon while under disability.  He admitted that after the defendant passed the money to Mongo, Mongo gave defendant five rocks of crack.  Defendant and Smith stated that Mongo had shorted them, and explained to Smith and defendant that they had received less than expected because defendant owed him money.  Smith objected that this involved his money, and the defendant and Mongo began to argue.  Smith also admitted that he initially told the police that he never got out of the Vibe during defendant's meeting with Mongo.  He also admitted that he told Michelle that he had shot Mongo after Mongo tried to rob him.

{¶ 30} Smith also stated, on cross-examination, that he told the police he had disassembled the gun while en route to the house on St. Clair Avenue, and that his previous testimony on direct examination regarding dismantling the gun while alone on Rozelle Avenue was incorrect.

{¶ 31} Creola Rice, defendant's former girlfriend, testified that she used to own a Pontiac Vibe. She further established that defendant had her car for a two-day period around May 21, 2009.

{¶ 32} Tamika Compton testified that she and Mongo have a child.  Although Mongo cleaned houses and was attempting to start a record label, he also sold drugs.  Mongo only sold to regular customers or friends of his customers.  According to Compton, defendant was one of Mongo's customers.  A short time before the shooting, defendant falsely told her that Mongo said he could get some drugs on credit.  As a result, he obtained $75 in drugs, which he never paid for.

{¶ 33} On May 21, 2009, at about 1:20 a.m., Compton drove her van to CVS to get allergy medicine for Mongo.  She gave Mongo the medicine, and the two arranged to work on her yard the following day.  Mongo then left in Compton's van.

{¶ 34} Curtiss Jones of the Trace Evidence Department of the Coroner's Office testified that gunshot primer residue samples were obtained from both of Mongo's hands.  Trace metal testing was also done, but yielded no reaction.  Bullet defects from the entrance and exit of the bullet or bullets were found on Mongo's pants.  Gunshot residue was also found on his clothing, but no fouling, thus indicating that the weapon was within the range of one to two feet away from Mongo at the time of discharge.

{¶ 35} He admitted on cross-examination that it was possible that a defect on the

6

pants could have been caused by another bullet.

{¶ 36} Michelle testified that she, Smith, and Rochelle had been celebrating Smith's birthday at McCall's Motor Inn. Smith then left, but he returned later with Michelle's father and defendant, who was driving a Vibe.  Defendant drove the group to Michelle's aunt's house on Rozelle Avenue.  They remained there for about 30 minutes, then went to a drug house on St. Clair Avenue.  They remained at this location until about 1:00 a.m., then went to the El Dorado Hotel in Euclid.

{¶ 37} On cross-examination, Michelle stated that she told the police that Smith had told her that when they went to get more drugs the man tried to rob him, that he shot the man in self-defense, and then fled into some nearby bushes.  She also admitted that Smith carried a "cowboy gun," and that she had visited Smith numerous times while he was in jail.  During those visits, Smith never indicated to her that defendant was the actual shooter.

{¶ 38} Frank Miller, M.D. testified that he reviewed the autopsy performed in this matter.  Mongo sustained a gunshot wound to his right leg above the knee cap.  There was also a red abrasion under the right knee.  The bullet entered the front of the knee and exited the rear of the knee.  It lacerated the popliteal artery, causing Mongo to bleed to death.

{¶ 39} East Cleveland Police Detective Charles Battle (Detective Battle) testified that he followed a trail of blood from the van from Potomac Avenue to Allegheny Avenue to Northfield Avenue, where they found a small pool of blood.  Blood typing was not performed, however. Detective Battle also testified that he reviewed Mongo's phone records and learned that Mongo had called Smith and a residence in East Cleveland shortly before his death.  Other calls included calls to Michelle and to McCall's Motor Inn.

{¶ 40} East Cleveland Detective Scott Gardner (Detective Gardner) testified that blood was dripping from the interior of the van to the exterior, and blood continued to drip even after the van was towed to a police garage for processing. Detective Gardner also testified that after the police learned that Mongo had called Smith, they obtained Smith's phone records and through a "reverse check," obtained the telephone number of defendant's girlfriend, Creola Rice. Using that information, he obtained her address and vehicle information, as well as defendant's phone number.

{¶ 41} Detective Gardner subsequently obtained the registration form for the room at McCall's Motor Inn, in addition to a surveillance video from the El Dorado Hotel showing defendant and Smith.

*State v. Gosha*, 2011 WL 1842770, at *1-*6 (Ohio App. May 12, 2011) (footnotes

7

omitted).  The jury found Gosha not guilty of aggravated murder and the lesser included offense of murder but guilty of aggravated robbery.  The jury found Gosha not guilty on all firearm specifications.

On May 12, 2010, a trial to the court began on the remaining counts and remaining specifications.  The state incorporated its earlier testimony and presented additional testimony pertaining to Gosha's prior convictions.  The trial court found Gosha guilty of tampering with evidence, guilty on the notice of prior conviction specification accompanying the jury's aggravated robbery conviction, and not guilty on the remaining counts and specifications.  The court sentenced Gosha to ten years' imprisonment for aggravated robbery and four years' imprisonment for tampering with evidence, the two terms to be served consecutively to one another.  The court also sentenced him to five years of mandatory post-release control.

Gosha timely filed a notice of appeal.  He raised three assignments of error in the state appellate court:

First Assignment of Error:

The evidence is insufficient to sustain a conviction of tampering with evidence, R.C. §2921.12.

Second Assignment of Error:

The convictions of aggravated robbery and tampering with evidence are against the weight of the evidence.

Third Assignment of Error:

The trial court erred by sentencing the appellant to consecutive sentences without making a record of its findings as required by R.C. §2929.14(E).

(Capitalization altered from the original.)  On May 12, 2011, the state appellate court

8

overruled Gosha's assignments of error and affirmed the judgment of the trial court.

Gosha timely filed an appeal to the Ohio Supreme Court.  In his memorandum in

support of jurisdiction, Gosha asserted three propositions of law:

> Proposition of Law No 1:  A conviction of tampering with evidence must be reversed on appeal when no evidence is presented at trial that a defendant assisted a co-defendant in disposing of evidence.
>
> Proposition of Law No. 2:  A conviction is against the manifest weight of the evidence when a co-defendant's testimony is not substantiated and is not credible.
>
> Proposition of Law No. 3:  Due process of law requires the court of appeals to apply Oregon v. Ice, (2009), 555 U.S. 160, 129 S. Ct. 711.

(Capitalization altered from the original.)  On September 21, 2011, the Ohio Supreme

Court denied leave to appeal and dismissed the appeal as not involving any substantial

constitutional question.

On July 28, 2009, Gosha filed in this court a petition for a federal writ of habeas

corpus.  In his petition, Gosha raised three grounds for relief:

> **Ground One:**  The court erred in entering a verdict of guilty on the charge of tampering with evidence.
>
> **Ground Two:**  The conviction of guilty was entered by the trial court of the charge of aggravated robbery and tampering with evidence even though it was against the weight of the evidence.
>
> **Ground Three:**  The trial court erred by sentencing the Defendant-petitioner to consecutive terms of imprisonment without making a record of its findings as required by O.R.C. 2929.14.

(Capitalization altered from the original.)  Respondent filed an Answer/Return of Writ on

February 22, 2013.[1]  Doc. No. 6.  Thus, the petition is ready for review.

---

[1]  In his petition, Gosha requested state court transcripts to allow him to adjudicate all issues related to possible violations of his rights.  *See* Petition, doc. no. 1,

II

*A.  Jurisdiction*

The Court of Common Pleas of Cuyahoga County, Ohio sentenced Gosha.

Gosha filed his writ of habeas corpus in the Northern District of Ohio and raises claims

regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

> Writs of habeas corpus may be granted by the Supreme Court, any justice
> thereof, the district courts and any circuit judge within their respective
> jurisdictions. . . . Where an application for a writ of habeas corpus is made by a
> person in custody under the judgment and sentence of a State court of a State
> which contains two or more Federal judicial districts, the application may be filed
> in the district court for the district wherein such person is in custody or in the
> district court for the district within which the State court was held which convicted
> and sentenced him and each of such district courts shall have concurrent
> jurisdiction to entertain the application.

28 U.S.C. § 2241(a ) & (d).  Cuyahoga County is within this court's geographic

jurisdiction.  This court has jurisdiction over Gosha's petition.

Respondent argues, however, that Gosha's second and third grounds for relief,

that his convictions for aggravated robbery and tampering with evidence were against

the manifest weight of the evidence and that the trial court erred in not issuing findings

of fact to support consecutive sentences, are not cognizable in habeas proceedings and

should be dismissed.  The court shall examine each of these claims in turn.

*A.      Whether a claim that a conviction is against the manifest weight of the evidence
         is cognizable in habeas proceedings*

The due process clause of the Fourteenth Amendment requires that a criminal

conviction be based upon proof beyond a reasonable doubt as to every fact necessary

---

p. 18.  When respondent filed his Answer, respondent served on Gosha all exhibits
attached to the Answer, including the state court transcripts, the indictment, and the
relevant state court briefing and opinions.  *See* Notice of Service, doc. no. 7.

10

to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  The test of whether a conviction is supported by sufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  A habeas court resolves all conflicting inferences in favor of the prosecution, and does not weigh the credibility of witnesses.  *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir.), *cert. denied*, 464 U.S. 962 (1983).  The evidence need not be sufficient to convince the habeas court of the petitioner's guilt beyond a reasonable doubt.  *Fuller v. Anderson*, 662 F.2d 420, 435 (6th Cir. 1981), *cert. denied*, 455 U.S. 1028 (1982).  Any conviction based upon evidence insufficient to convince any rational trier of fact of the essential elements of the crime offends the due process clause and may serve as grounds for habeas relief.

A claim that a conviction is against the manifest weight of the evidence differs from a claim that the conviction is based upon insufficient evidence.  A claim that a conviction is against the manifest weight of the evidence asks the court to consider the weight and credibility of the evidence.  A court reviewing that claim must resolve conflicting testimony, requiring the court to re-assess the credibility of witnesses.  *State of Ohio v. Thompkins*, 78 Ohio St. 3d 380, 387-88, 678 N.E.2d 541, 546-47 (1997); *see also Tibbs v. Florida*, 457 U.S. 31, 37-38, 38 n.11 (1982); *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).  Because a federal court reviewing a petition for a writ of habeas corpus has no authority to re-assess the credibility of witnesses at trial, it cannot determine whether a conviction was against the manifest weight of the evidence.  *Marshall v. Lonberger*, 459 U.S. 422 (1983).

When a state appellate court determines that a conviction is not against the manifest weight of the evidence, that necessarily includes a determination that the evidence is sufficient to support the conviction.  *Nash v. Eberlin*, 2007 WL 4438008, *3 (6th Cir. Dec. 14, 2007); *Thompkins*, 78 Ohio St. 3d at 387, 678 N.E.2d at 546.  Thus, when the state appellate court determined that Gosha's conviction was not against the manifest weight of the evidence, it necessarily determined that his conviction was supported by sufficient evidence.

For this reason and in the interests of justice, the court will consider Gosha's second ground for relief as a claim that his conviction was upon insufficient evidence and examine the merits of that claim.

B.     *Whether a claim that the court should have issued judicial findings of fact before imposing consecutive sentences is cognizable in habeas proceedings*

In his third ground for relief, Gosha contends that the trial court erred in sentencing him to consecutive sentences without issuing findings justifying that sentence, as required by Ohio Rev. Code § 2929.14.  Respondent answers that to the extent Gosha is merely challenging Ohio's application of its sentencing laws, that challenge is not cognizable in habeas proceedings.  Respondent adds that if Gosha is challenging his sentencing based on the application of *Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711 (2009), to Ohio's sentencing laws, his argument is both not cognizable and without merit.

Respondent's position has merit.  First, in reviewing the decision of state courts, it is not appropriate for federal courts to re-examine state court determinations of state

12

law.[2]  Whether the Ohio appellate courts erred by mis-applying Ohio Rev. Code §

2929.14 is a question of state law.  As that issue does not implicate the constitution,

laws, or treaties of the United States, it is beyond the subject matter jurisdiction of this

court.

Second, *Ice* did not, as Gosha contends, re-establish the sentencing regime that

existed prior to *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (2006).  Prior to the

decision in *Foster*, Ohio judges were required to make findings of fact before sentencing

convicted defendants to more than the minimum sentence in a sentencing range or to

consecutive rather than concurrent sentences.  In *Foster*, the Ohio Supreme Court

applied the holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v.

Washington*, 542 U.S. 296 (2004), and struck down portions of Ohio's sentencing

regime.  The result was that Ohio judges were no longer required to make findings of

fact to sentence a defendant to any sentence within the approved range for a particular

crime or to sentence a defendant to concurrent sentences.

In *Ice*, the Supreme Court held that  judicial factfinding to justify consecutive

sentences was not unconstitutional because concurrent sentencing had always been

within a judge's authority at common law.  Although *Ice* permitted judicial factfinding, it

---

[2]  As the Supreme Court in *Estelle* stated

"[F]ederal habeas corpus relief does not lie for errors of state law."  *Lewis v.
Jeffers,* 497 U.S. 764 (1990);  see also *Pulley v. Harris,* 465 U.S. 37, 41 (1984). .
. .  [I]t is not the province of a federal habeas court to reexamine state-court
determinations on state-law questions.  In conducting habeas review, a federal
court is limited to deciding whether a conviction violated the Constitution, laws, or
treaties of the United States.

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

13

did not *require* such factfinding.  Thus, whether Ohio law requires judicial factfinding for consecutive sentences is a matter of state law within the exclusive province of the Ohio legislature and the Ohio Supreme Court.[3]

As Gosha's third ground for relief alleges that his sentencing violated Ohio law, that claim is beyond this court's subject matter jurisdiction.  Consequently, Gosha's third ground for relief should be dismissed as not cognizable.

B.    *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  All of Gosha's claims involve legal issues which can be independently resolved without additional factual inquiry.

C.    *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional

---

[3]  In *State v. Hodge*, 128 Ohio St. 3d 1, 941 N.E.2d 768 (2010), the Ohio Supreme Court determined that *Ice* did not reinstate the pre-*Foster* requirement that judges issue findings of fact when sentencing defendants to consecutive sentences.

context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982);

*Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir.

1989).  "[O]nce the federal claim has been fairly presented to the state courts, the

exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v.*

*Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly

satisfied when the highest court in the state in which petitioner was convicted has been

given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v.*

*Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

The requirement that petitioners exhaust state remedies is a matter of comity

between the federal government and the states.  *Rose v. Lundy*, 455 U.S. 509, 518

(1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) (other citations omitted).

Because exhaustion is a matter of comity, a petition containing unexhausted claims may

be denied on the merits.  28 U.S.C. § 2254(b)(2).

Gosha has no state remedies available for the sole claim cognizable in this court.

Because no state remedies remain available to him, Gosha has exhausted state

remedies for that claim.

*D.     Procedural default*

Procedural default occurs when a petitioner fails to present fairly his

constitutional claims to the highest state court in a federal constitutional context.

*Anderson*, 489 U.S. 4; *Picard v. Connor*, 404 U.S. 270 (1971).  Reasons of federalism

and comity generally bar federal habeas corpus review of "contentions of federal law . . .

not resolved on the merits in the state proceeding due to respondent's failure to raise

them there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87

15

(1977).

Respondent does not contend that Gosha has defaulted his remaining claim.

III.

The AEDPA altered the standard of review that a federal court must apply when

deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d)

provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal law, as determined
> by the Supreme Court of the United States; or resulted in a decision that was
> based on an unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly

established federal law or was based on an unreasonable determination of the facts in

light of the evidence.  *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Williams v. Taylor*,

529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the

Supreme Court, not its dicta, and the law must be clearly established at the time of the

petitioner's conviction.  *Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and

"unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may
> obtain federal habeas relief with respect to a claim adjudicated on the merits in
> state court.  Under the statute, a federal court may grant a writ of habeas corpus
> if the relevant state-court decision was either (1) "*contrary to* . . . clearly
> established Federal law, as determined by the Supreme Court of the United
> States," or (2) "*involved an unreasonable application of* . . . clearly established
> Federal law, as determined by the Supreme Court of the United States."

16

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases."  *Id.* at 405.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).  The court will examine Gosha's remaining grounds for relief using the deferential standard applied to state court rulings on the petitioner's claims.

This court construes Gosha's first and second grounds for relief as claims that the evidence produced at trial was insufficient to support his convictions for tampering with evidence and aggravated robbery.  Respondent denies Gosha's convictions were based upon insufficient evidence.  The test of whether a conviction is supported by sufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319.  Using this standard, this court will examine whether the evidence produced at trial was sufficient to support his convictions for tampering with evidence and aggravated robbery.

A.     *First ground for relief:  tampering with evidence*

The state appellate court adjudicating this claim on direct review noted that the

17

elements of tampering with evidence are specified at Ohio Rev. Code § 2921.12(A)(1):

> No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall . . . [a]lter, destroy, conceal, or remove any . . . thing, with purpose to impair its value or availability as evidence in such proceeding or investigation.

*Gosha*, 2011 WL 1842770 at *8. After reviewing the caselaw relevant to Gosha's case, the state appellate court stated that the key issue is whether there is evidence that the defendant disposed of the gun with the purpose of impairing its value or its availability as evidence.

The state appellate court then considered whether Gosha tampered with evidence by aiding and abetting in disposing of the pistol used to shoot Mongo and examined the law relevant to aiding or abetting in general and to aiding and abetting tampering with evidence in particular:

> {¶ 56} R.C. 2923.03(A)(2), Ohio's complicity statute, states that "no person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: * * * Aid or abet another in committing the offense."
>
> {¶ 57} To support a conviction for complicity by aiding and abetting, the evidence must demonstrate "that the accused supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the accused shared the criminal intent of the principal." *State v. Mota,* Warren App. No. CA2007–06–082, 2008–Ohio–4163.
>
> {¶ 58} A charge of tampering with evidence may be established from evidence that the defendant aided and abetted another in altering, destroying, concealing, or removing an object with purpose to impair its value or availability as evidence in such proceeding or investigation. *State v. Mitchum* (Mar. 30, 1984), Gallia App. No. 82CA12; *State v. Greene,* Summit App. No. 21795, 2004–Ohio–3944.
>
> ¶ 59} In *Greene,* the court held that driving the getaway car during the commission of an offense serves as the proper basis for a conviction of aiding and abetting the commission of an offense. The court affirmed a conviction for tampering with evidence where the record demonstrated that defendant drove the getaway car, while the codefendant threw evidence from the car.

18

*Gosha*, 2011 WL 1842770 at *8-*9.

Finally, the appellate court examined the facts of Gosha's case in light of the law it had recited:

> {¶ 60} In this matter, Smith testified that after the shooting, defendant and Michelle's father returned to McCall's Motor Inn to pick up the women, while Smith disassembled the gun. Smith explained that he was "getting rid of what needed to be get rid of." Defendant and Michelle's father then returned to Rozelle Avenue with the women. Later, Smith, Michelle, Rochelle, and defendant drove to St. Clair Avenue, to the home of defendant's friend, and continued partying. While en route, defendant drove and Smith threw the pieces of the disassembled gun out of the car window. On cross-examination, Smith acknowledged that he told police that he had disassembled the gun while with defendant en route to the St. Clair house, then threw the pieces from the car. He admitted that his previous testimony on direct examination was incorrect. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that defendant aided and abetted in the tampering with evidence. The record contains evidence that defendant drove while Smith was "getting rid of what needed to be get rid of," i.e., disassembled the weapon used in the shooting and discarded the pieces out of the window in order to destroy, conceal, or remove the weapon with purpose to impair its availability as evidence in any subsequent investigation or court proceeding.

*Gosha*, 2011 WL 1842770 at *8-*9.

Gosha provides no argument to demonstrate that the state appellate court erred in its statement of the law or that its factual findings were unreasonable. Moreover, the state court's finding that there was sufficient evidence to convict Gosha for tampering with evidence is, in light of *Green*, entirely reasonable and does not offend federal due process.

For the reasons given above, Gosha's first ground for relief should be dismissed as without merit.

B.    *Second ground for relief:  aggravated robbery*

Ohio Rev. Code § 2911.01(A), aggravated robbery, reads in relevant part as

19

follows:

> No person, in attempting or committing a theft offense . . . shall do any of the following: . . .
>
> > (2) Have a dangerous ordnance on or about the offender's person or under the offender's control;
> >
> > (3) Inflict, or attempt to inflict, serious physical harm on another . . . .

"Theft," under Ohio law, includes knowingly exerting control over the property of another without the consent of the owner with the purpose of depriving the owner of the property.  Ohio Rev. Code § 2913.02(A).

The state appellate court examining Gosha's claim on direct appeal that his conviction for aggravated robbery was against the manifest weight of the evidence found, "The evidence demonstrated that in attempting or committing a theft offense, defendant obtained Smith's gun, and then took the drugs from Mongo's hands."  *Gosha*, 2011 WL 1842770 at *10.  This evidence, if believed by the jury, was sufficient to support the appellate court's conclusion and to support a conviction for aggravated robbery.  Moreover, the state court's finding that Gosha's conviction for aggravated robbery was not against the manifest weight of the evidence necessarily includes a determination that sufficient evidence support's Gosha's conviction.

Gosha makes no effort to demonstrate that the state appellate court erred in its statement of the law or that its factual findings were unreasonable.  The state appellate court's conclusion that sufficient evidence supported Gosha's conviction for aggravated robbery is reasonable and does not offend federal due process.  Consequently, Gosha's second ground for relief should be dismissed as without merit.

20

IV.

For the reasons given above, Gosha's first and second grounds for relief should

be dismissed as without merit and his third ground for relief as not cognizable.  As this

disposes of all Gosha's claims, his petition should be dismissed with prejudice

Date:  May 6, 2013                                         /s/ Nancy A. Vecchiarelli
                                                              United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the
Clerk of Courts within fourteen (14) days after the party objecting has been
served with a copy of this Report and Recommendation.  Failure to file objections
within the specified time may waive the right to appeal the District Court's order.
*See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*,
474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**

21